IN THE UNITED STATES DISTRICT COURT,
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT LEE WEGEMER, <br><br> Petitioner, <br><br> vs. <br><br> SUPERINTENDENT ROBERT GILMORE; ATTORNEY GENERAL OF PENNSYLVANIA; DISTRICT ATTORNEY OF ERIE COUNTY, PENNSYLVANIA, <br><br> Respondents | Case No. 1:17-cv-00180 (Erie) <br><br> RICHARD A. LANZILLO <br> UNITED STATES MAGISTRATE JUDGE <br><br> OPINION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 5) |

Before the Court is a petition for a writ of habeas corpus filed by state prisoner Robert Lee Wegemer (Wegemer) pursuant to 28 U.S.C. § 2254. ECF No. 5. He is challenging the judgment of sentence imposed upon him on November 20, 2012, by the Court of Common Pleas of Erie County, Pennsylvania at its criminal docket number CP-25-CR-002267-2011. Respondents argue that Wegemer's petition is barred by the applicable statute of limitations. This opinion will address that contention.

I.   Factual Background

The Court takes the following factual background from the Pennsylvania Superior Court's opinion addressing Wegemer's direct appeal from his conviction and sentence:

> M.H. [aged nine at the time of offenses] is the minor daughter of [G.H.] and [S.C.]. Her parents divorced in September, 2004, but had an amicable custodial/visitation arrangement whereby M.H. lived with her mother and [G.H.] was with M.H. on most weekends, in addition to other occasions requested by [S.C.]. In June of 2008, [G.H.] moved to 6667 Pinar Road in Harborcreek Township, Erie County Pennsylvania. [G.H.'s] new neighbor was his long-time friend, Robert Lee Wegemer ("Appellant"), who lived at 6675 Pinar Road. Appellant has known M.H. since the time she was born. At approximately the same time [G.H.] moved to Pinar Road, he began living with his girlfriend, [M.C.]. In March 2010, they were forced to move. Appellant permitted the couple to reside with him in

1

his modest two bedroom "bungalow", otherwise described as a trailer by M.H. During that time, M.H. sometimes stayed with her father and [M.C.] at the Appellant's home. After nearly two months of this arrangement, Appellant had an argument with [G.H.] and asked him and [M. C.] to move out. Appellant attributed the argument to the tension of a cramped living arrangement. In early April 2010, [G.H.] and [M.C.] temporarily moved to the Greentree Motel in Harborcreek, Pennsylvania before obtaining a permanent residence in Waterford, Pennsylvania on or about June 19, 2010.

Appellant babysat M.H., at times with others present and at times when he and M.H. were alone. Appellant's babysitting routine on these days was often the same. Prior to going to work, [G.H.] would take M. H. to Appellant's home at roughly 4:30 A.M. Appellant would leave the door unlocked and M.H. would let herself in and immediately proceed to his bedroom to inform him M.H. was there. After "tapping him on the shoulder" M.H. would then go to the couch and watch television or fall asleep. She would remain with Appellant until [M.C.] picked her up in the afternoon.
On or about June 13, 2010, Appellant babysat M.H. for the last time. As usual, [G. H.] dropped M.H. off early in the morning. After failing to get comfortable on the couch, M.H. went to Appellant's bedroom to watch television. She soon fell asleep. Sometime later, M.H. awoke to Appellant removing her jeans and underwear. Appellant, clothed only in boxer briefs, was positioned to her side. He completely removed her jeans, placing them on the floor at end of bed. He then pulled her underwear to her feet. Then as M.H. testified, "like he gets on top of me and he, like, takes his private area out of his boxers and then he starts moving back and forth ... by my private area." After "a couple minutes", M.H. felt "the top of his private into mine". She stated that it felt "weird". M.H. testified that Appellant never said anything to her, nor did she say anything to him. Appellant was on top with his arms on either side of her. This prevented her from leaving. When Appellant finished, he rolled "back over". M.H. pulled her underwear up and fell asleep.

When M.H. awoke, she noticed that Appellant had gone to the kitchen to make breakfast. Although M.H. did not feel hurt, she stated she felt "shocked" by the incident. She immediately went to the bathroom and noticed that there was "a gooey thing in my underwear". As she said, "It didn't look like it was a color at all." Appellant then took M.H. to Dairy Queen and McDonalds. When they returned to Appellant's residence, Appellant disappeared into his garage and M.H. watched television until [M.C.] picked her up in the afternoon. M. H. did not tell [M. C.] or her father about the event.

Several weeks after [G.H.] and [M.C.] moved into their residence in Waterford (approximately mid-August 2010), M.H. asked [M.C.] if

2

she could ask her something. M.H. then retrieved a piece of paper
and wrote down everything that Appellant had done. Making hand
gestures around her stomach, M.H. asked [M.C.] if she "could be
pregnant". M.H. insisted that she "not tell my daddy." [M.C.]
immediately took the note to [G.H.]. He informed M.H.'s mother
the next morning. [S.C.] assured him that she would handle the
matter.

Soon thereafter, M.H.'s parents filed a report with The Erie County
Office of Children and Youth ("OCY"). On September 16, 2010,
Corporal Mark Van Horn, a member of the Pennsylvania State Police
Criminal Investigation Division, was officially assigned the case.
Based upon the allegations received from the OCY, his discussions
with [G.H.], [S.C.] and [M.C.], and after reviewing M.H.'s handwritten
note, Trooper Van Horn went to Appellant's home to interview him.
Appellant cooperated. Specifically, Appellant confirmed that he
babysat M.H. on multiple occasions, including during the time frame
of the incident. Appellant also informed Trooper Van Horn that "she
would—she would sleep on the couch and even in his bed."
(Appellant testified he did not recall making that statement.)

On September 21, 2010, M.H. participated in a video recorded
interview with Michelle Peterson, a forensic interviewer with the
Children's Advocacy Center. Trooper Van Horn, representatives
from OCY and the Erie County District Attorney's office observed
the interview from outside the room. Subsequently, M.H. participated
in a forensic medical examination at the Saint Vincent Medical Center
on December 2, 2012. Dr. Stephanie F. Russo and Ms. Tammy
Bimber conducted the interview and examination. Trooper Van
Horn did not file charges until July 2011. He explained that the
reasons for this delay were: (1) he was unable to obtain any physical
evidence due to M.H.'s delay in reporting the incident; (2) his
promotion that occurred around the same time he was assigned this
case required that he complete investigatory reports related to a five
county cold homicide investigation. Trooper Van Horn stated that
the delay in filing charges was not M.H.'s or her parents' fault. At
trial, Appellant denied that the incident occurred.

*Commonwealth v. Wegemer*, 2013 WL 11253466, *1-3 (Pa. Super. Ct. Oct. 8, 2013).

II.     Relevant Procedural History

Wegemer was charged by criminal information in the Erie County Court of Common Pleas with rape of a child, a violation of 28 Pa. C.S.A. § 3121, sexual assault, a violation of 18 Pa. C.S.A., 3124.1, indecent assault, a violation of 18 Pa. C.S.A. § 3126, endangering the welfare of children, a

3

violation of 18 Pa. C.S.A. § 4304, and corruption of minors, a violation of 18 Pa. C.S.A. § 6301. SCR No. 3.[1] On July 24, 2012, following a two-day jury trial, Wegemer was found guilty on all counts. SCR No. 21. On November 20, 2012, Wegemer was sentenced to an aggregate term of ten years and nine months to twenty-two years of incarceration. SCR No. 25. Wegemer did not file a post-trial motion. Wegemer's conviction and sentence were affirmed by the Pennsylvania Superior Court on October 8, 2013. *Commonwealth v. Wegemer*, 2013 WL 11253466 (Pa. Super. Ct. Oct. 8, 2013). Wegemer did not file a petition for an allowance of appeal with the Supreme Court of Pennsylvania.

On October 6, 2014, Wegemer filed a petition pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa. C. S. A. § 9545, et seq. The Court of Common Pleas for Erie County dismissed his petition for post-conviction relief on April 13, 2015. Wegemer appealed and the Pennsylvania Superior Court affirmed the Common Pleas Court's dismissal on October 6, 2016. *See Commonwealth v. Wegemer*, 2016 WL 7745068 (Pa. Super. Ct. Oct. 6, 2016). Wegemer's petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on May 25, 2017. *See Commonwealth v. Wegemer*, 169 A.3d 548 (Pa. 2017).[2]

Wegemer filed the instant petition for a writ of habeas corpus with this Court on August 1, 2017. ECF No. 5. Wegemer then filed another petition for post-conviction relief in state court on December 27, 2017. The Erie County Court of Common Pleas dismissed that petition on March 8, 2018. Wegemer did not appeal that dismissal.

---

[1] Respondents submitted to this Court a hardcopy of documents filed with the Court of Common Pleas in Petitioner's underlying criminal case at docket CP-25-CR-2267-2011, ECF No. 26. Those documents are indexed and numbered 1 through 53 and this Court shall cite to them as "SCR No. _____." When available, specific page numbers will be indicated.

[2] A petitioner is not entitled to statutory tolling for the period available to file a petition for writ of certiorari to the United States Supreme Court following state collateral review, even if the petition is actually filed. *Lawrwence v. Florida*, 549 U.S. 327, 333-334 (2007).

4

On September 11, 2017, Wegemer filed a motion to stay these proceedings, which this Court granted on September 29, 2017. ECF No. 8, ECF No. 10. This stay was lifted on May 8, 2018. ECF No. 14. That same day, this Court entered an order directing the Office of the District Attorney of Erie County to enter an appearance and to file an answer to Wegemer's petition. ECF No. 15. On May 18, 2018, Assistant District Attorney Michael E. Burns entered an appearance. ECF No. 19. Wegemer filed a motion to amend his Petition, which this Court granted on May 22, 2018. Respondents were ordered to address the claims of prosecutorial misconduct which Wegemer raised in his amended petition. ECF No. 22. On June 18, 2018, the District Attorney's office filed a Response to Wegemer's petition. ECF No. 24. A copy of the state court record was filed on June 21, 2018. ECF No. 26.

III.   Petitioner's Claims

Wegemer's petition, as originally filed, raised twenty-five grounds for relief. *See generally* ECF No. 5. By order dated August 16, 2018, this Court granted Petitioner's request to withdraw all grounds for relief except his claim of actual innocence and two claims of ineffective assistance of trial counsel relating to trial counsel's failure to interview Dr. Stephanie F. Russo or call her to testify. *See* ECF No. 5, pp. 30-31, 41-42. These are the only remaining claims in Wegemer's petition.

III.   The AEDPA Statute of Limitations Bars Wegemer's Petition.

The Respondents argue that Wegemer's habeas petition is untimely and should be dismissed. *See* ECF No. 24, 2-3.

A.   AEDPA Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review. It is codified at 28 U.S.C. § 2244(d) and it provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). *See Caldwell v. Mahally, et al.*, 5741706, *5 (W.D. Pa. Nov. 5, 2019). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). *Id.* Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. *Id.*

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005). The Court will,

6

therefore, separate Wegemer's two claims of ineffective assistance of counsel from his claim of actual innocence in reviewing the timeliness of his petition.

    B.    Ineffective Assistance of Counsel Claims (Grounds 12 and 17)

        1.    Trigger Date Calculation

Two claims raised in Wegemer's petition concern matters which occurred at the time of trial (ineffective assistance of trial counsel grounds 12 and 17). These claims do not implicate newly enunciated constitutional rights and are not based on facts that were discovered later. Furthermore, there were no state-created impediments that prevented Petitioner from raising these claims sooner. Consequently, the "trigger date" for these claims is the date on which Wegemer's judgment of sentence became final. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review, including the time limit (90 days) for filing a writ of certiorari in the Supreme Court).

The Pennsylvania Superior Court affirmed Wegemer's conviction and sentence on October 8, 2013. Wegemer had thirty days to file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania but did not do so. *See* Pa. R. App. P. 1113(a). Therefore, his judgment of sentence became final on November 8, 2013 and the one-year ADEPA clock began to run the next day. Thus, Wegemer had until November 9, 2014, to file a timely federal habeas petition. For purposes of the prisoner mailbox rule, Wegemer's habeas petition was filed on July 27, 2017, the date he signed it. *See, e.g., Scales v. Atty. Gen. of Penna.*, 2018 WL 3823779, *1 (W.D. Pa. Aug. 10, 2018). His petition was filed more than two and one-half years too late. Because Wegemer sought federal habeas relief well outside the one-year limitations period, his petition is statutorily time-barred. Given this deficiency, the Court must determine whether Petitioner can take advantage of the statutory tolling provision set out in Section 2244(d)(2) before dismissing it.

7

### 2. Statutory Tolling

Although Wegemer is entitled to some statutory tolling, his habeas petition is still untimely. Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding. Wegemer filed his first PCRA petition on October 6, 2014, by which time 331 days of his one-year limitations period had expired (November 9, 2013 thru October 6, 2014). Those proceedings were "properly filed," and, as such, the statute of limitations was tolled until they concluded when the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on May 25, 2017. The statute of limitations started to run again the following day, and, at that point in time, Wegemer only had 34 days (365 days - 331 days = 34 days) remaining to file a timely habeas petition, or until June 29, 2017. As previously noted, he did not file his habeas petition until July 27, 2017, nearly a month after the statute of limitations expired. Thus, his petition is untimely.

To the extent Wegemer attempts to argue that he is entitled to statutory tolling for the time his second PCRA petition was pending in the state courts, he is incorrect. Wegemer did file a second PCRA petition on December 27, 2017. But that petition was dismissed as untimely and was thus not "properly filed" within the meaning of section 2244(d)(2). *See Artuz v. Bennett*, 121 S. Ct. 361, 364 (2000) (An application for state post-conviction relief or collateral review is "properly filed" as required to toll AEDPA's statute of limitations period for filing a federal habeas petition "'when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]' notwithstanding the substance or merits of the claims contained within the application itself."). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a federal court is bound by a state court's finding that a petitioner's PCRA petition was untimely, even where the petitioner sought to pursue his PCRA petition under a statutory exception to the PCRA's time bar).

Further, given that this second petition was filed after the time for filing his habeas petition (June 29, 2017) has expired, the pendency of his second PCRA proceedings cannot be used to statutorily toll Wegemer's time for filing his habeas petition. *See McWhorter v. McGinley*, 2019 WL 3848873, \*4 (E.D. Pa. July 26, 2019) (citing *Morris v. Mazurkiewcz*, 2011 WL 2708498, \*3 (E.D. Pa. June 8, 2011) (holding that where the AEDPA statute of limitations had already ran, a subsequent PCRA Petition does not "toll an already expired statute of limitations.")).

2. Equitable Tolling

Next, the Court must consider whether AEDPA's statute of limitations should be equitably tolled, thereby rendering Wegemer's petition timely filed. *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002), *cert. denied*, 540 U.S. 826 (2003) (citing *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 617-618 (3d Cir. 1998) (citation omitted)). The Supreme Court has held that the habeas time bar is not jurisdictional, but instead subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649-50 (2010). But AEDPA's one-year limitations period may be equitably tolled only in extraordinary situations. *Id.* at 649-50. *See also Severs v. Atty. Gen. of New Jersey*, 2019 WL 5704591, at \*2 (3d Cir. Nov. 9, 2019) (citing *Holland*). The limitation period will be equitably tolled when the principles of equity would make the rigid application of a limitation period unfair. *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006); *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999). To receive the benefit of equitable tolling, however, Wegemer must show that he (1) pursued his rights diligently, and (2) that extraordinary circumstances prevented him from filing a timely petition. *Id.* at 649.

Wegemer has shown neither and is, therefore, not entitled to equitable tolling. First, he has failed to show that he pursued his rights diligently. *See Lawrence v. Florida*, 549 U.S. 327, 335 (2007). The diligence required of a prisoner in pursuing the timely filing of his habeas petition is "reasonable diligence" not maximum diligence. *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland*, 560 U.S. at 653). The reasonable diligence test is subjective, taken in light of the petitioner's

9

circumstances. *Id.* at 800 (citations omitted). Wegemer bears a "strong burden to show specific facts" supporting equitable tolling. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). "[L]ack of legal knowledge or legal training does not alone justify equitable tolling." *Id.* (citing *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003)).

Here, Wegemer fails to provide an explanation for the delay of over three hundred days from the conclusion of his direct appeal to the filing of his first PCRA petition. *See, generally*, ECF No. 43. He also does not explain the close to a month's delay in filing his habeas petition. He does not contend that he "was prevented from managing his affairs or understanding his appeal rights." *United States v. Johnson*, 743 Fed. Appx 153, 159 (3d Cir. 2018) (*cert. denied* 139 S. Ct. 471 (2018)). He offers no specificity as to any alleged lack of access to courts or expounds on any steps he took to diligently pursue his federal claims.

Neither has Wegemer established that extraordinary circumstances prevented him from filing. The closest he comes is a statement in his "Motion For Stay of Proceedings," in which Wegemer states that, at the conclusion of the direct appeal process, "Petitioner's family and friends took some time to raise funds for legal expenses." ECF No. 8, p. 3. But a lack of funds for legal services is not an extraordinary circumstance that warrants equitable tolling. *See, e.g., Francis v. Miller*, 183 F. Supp.2d 232, 235 (E.D.N.Y. 2002); *Cox v. Small*, 2010 WL 4289868, at *6 (E.D. Ca. Oct. 22, 2010) (holding that the AEDPA statute of limitations would be effectively negated if a lack of funds for legal assistance was an "extraordinary circumstance" because most Section 2254 litigants proceed pro se). Therefore, equitable tolling cannot excuse the untimeliness of his petition and allow this Court to consider the merits of these two claims. *See, e.g., McGowan v. Ransom, et al.*, 2019 WL 5580993, at *6 (E.D. Pa. Oct. 4, 2019).

C. Actual Innocence Claim

Wegemer separately claims that his actual innocence of the crimes charged takes his petition out from under AEDPA's one-year statute of limitations. *See* ECF No. 43, p. 27. In *McQuiggin v. Perkins*, 569 U.S. 383, 391-393 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. To make this showing, a petitioner must present "(1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Schlup*, 513 U.S. at 324, 327). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a Petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *McQuiggan*, 569 U.S. at 399-40. The Supreme Court cautioned that "tenable actual-innocence gateway pleas are rare ...." *Id.* at 386.

The Court's first point of inquiry is whether Wegemer has pointed to any "new" evidence which shows his actual innocence. He has not. "New evidence" in this context does not mean "newly discovered evidence;" it just means evidence that was not presented at trial. *Schlup*, 513 U.S. at 322, 324. And because an actual-innocence claim "involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *House v. Bell*, 547 U.S. 518, 538 (2006). The inquiry considers "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (internal citations and quotation marks omitted). The court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. Procedural actual-

11

innocence claims, like Wegemer's here, are evaluated differently than substantive claims of actual innocence. *Schlup*, 513 U.S. at 316–17. In a substantive actual-innocence claim, the petitioner's new evidence must be strong enough to convince the court that his sentence is constitutionally intolerable "even if his conviction was the product of a fair trial." *Id.* at 316. In a procedural—or "gateway"—actual-innocence claim, the petitioner's new evidence need only establish sufficient doubt about his guilt to justify a conclusion that his sentence is a miscarriage of justice "unless his conviction was the product of a fair trial." *Id.* That is, a petitioner satisfies the gateway standard if his new evidence raises "sufficient doubt about [his] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error." *Id.* at 317.

Wegemer argues that two medical reports authored by Dr. Russo—one dated December 2, 2010, and one dated July 10, 2012—are new evidence of his innocence. ECF No. 43, p. 28. Neither of these reports, which Wegemer claims contradict the victim's testimony, were introduced at trial. *Id.* He argues that the victim told Dr. Russo a different version of how the abuse took place. *See* ECF No. 43, p. 28-29. For example, on December 2, 2010, Russo reported that the victim stated that, upon being dropped at Wegemer's house, she went "sometimes [to] the guest room or the floor next to his bed . . . sometimes he would put me in his bed and then he would undress me." ECF No. 43-1, p. 4. Wegemer argues that this contradicts the victim's trial testimony that she was in Wegemer's bed and that he "woke her up" when "he started taking off her clothes." ECF No. 43, p. 28. Wegemer quibbles with other details: the victim testified at trial that Wegemer was "on top" of her when he raped her but told Dr. Russo that Wegemer "would turn her on her side." *Id.* at 29. Russo's subsequent report of an examination of the victim on July 5, 2012 noted that "an indeterminate exam is concerning and suspicious for abuse, but not definitive according to pediatric sex abuse experts and researchers such as Joyce Adams, MD." *Id.* at 10. Wegemer claims this was a retraction of her prior conclusions and thus, exonerates him.

12

Dr. Russo's reports, however, are not "new evidence." They are part of the record before the state court. Indeed, the state trial court's exclusion of these reports and any impeachment testimony that might ensue of the victim based on them were the sole issues Wegemer raised on direct appeal. *See* SRC No. 42. The state court record reveals that Wegemer only raised two issues on appeal:

1. Did the trial court commit an abuse of discretion or error of law when it refused to admit Dr. Russo's report and/or the statements of the victim recorded verbatim in the report, as substantive evidence under Pennsylvania Rule of Evidence 803(4), "statements for the purposes of medical diagnosis or treatment?"

2. Did the trial court commit an abuse of discretion and/or error of law when it refused to permit defense counsel to confront/impeach the alleged victim with specific inconsistent statements that she made to Dr. Russo?

SCR No. 42, p. 6. On direct appeal, Wegemer challenged the trial court's evidentiary ruling which sustained the Commonwealth's objection to defense counsel's cross-examination of the victim that referenced statements she made to Dr. Russo during a medical examination. In ruling against the Petitioner, the Superior Court specifically noted that Wegemer did not seek the admission of Dr. Russo's report at trial as substantive evidence. And further, the Superior Court found the issue waived, noting "Appellant only argued admissibility on the grounds that Dr. Russo's report was not prohibited hearsay . . . nowhere in the record did Appellant contend before the trial court that the statements attributed to [the victim] in Dr. Russo's report were inconsistent statements." *Id.* at p. 14. This demonstrates that Dr. Russo's reports are not "new evidence" because they were the focus of Wegemer's direct appeal.

The substance of Wegemer's argument, at its core, is that the trial court erred in not permitting him to use Dr. Russo's reports to impeach the victim's testimony. *See* ECF NO. 43, p. 28-30. However, such trial errors, even if true, do not warrant the application of the *McQuiggin*

13

exception to overcome the statute of limitations. *See, e.g., Howard v. Manis*, 2019 WL 2078774, *3 (E.D. Va. May 10, 2019). Instead, Wegemer "must make a convincing showing that he is actually factually innocent of the crime of which he stands convicted." *Id.* (citations omitted). This, he has not done. None of the minor inconsistencies between Dr. Russo's reports and the victim's testimony establish Wegemer's actual innocence. And, in any event, numerous such discrepancies were presented to the jury by Wegemer's trial counsel. In his closing statement, for example, Wegemer's lawyer told the jury: "I would ask you to look at the contradictory statements that were given by [the victim] and by everybody else who testified on behalf of the Commonwealth." SCR at 180a (Reproduced Record in the Superior Court (no index number provided)). Counsel goes on to highlight perceived inconsistencies in the victim's testimony: "when did she say these things? When did she tell somebody? . . . How many times did it happen? . . . Was she asleep? Was she awake? . . . How did she get into the house? You heard her say she let herself in – you heard her dad say he took her into the house. Again, they're inconsistent." *Id.* at 181a.

Wegemer has failed to meet the high standards of *McQuiggin* and *Schlup* by not submitting any evidence of his actual innocence. Thus, he has not demonstrated that the "actual innocence" exception to the AEDPA statute of limitations applies to his petition. *See, e.g., Bartlett v. Superintendent SCI Muncy PA*, 2014 WL 1302049 at *1 n.1 (E.D. Pa. Apr. 1, 2014) (adopting and approving R & R concluding that petition was time-barred and because "petitioner fails to point to 'new reliable evidence,' [he] is unable to satisfy the actual innocence exception"); *Holmes v. Mooney*, 2017 WL 9605081 at *6 (E.D. Pa. June 22, 2017) (concluding that petitioner failed to satisfy "actual innocence" exception to AEDPA statute of limitations where "[n]o new evidence has been presented to show that he is in fact innocent of the crimes.... He is not due habeas review of his untimely habeas claims under a showing of actual innocence."), *report and recommendation approved* 2018 WL 3046609 (E.D. Pa. June 20, 2018).

V.  Conclusion

For the foregoing reasons, the instant petition is dismissed because it is time-barred. Wegemer did not file the § 2254 petition within the one-year AEDPA statute of limitations and no tolling or other exceptions apply to his petition. The petition is thus, dismissed, with prejudice.

Ordered and entered this 2nd day of December, 2019.

							RICHARD A. LANZILLO
							United States Magistrate Judge